JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Joan Preston | The Vanguard Group, Inc. |

**(b)** County of Residence of First Listed Plaintiff   Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Chester, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Koller Law PC
2043 Locust St., Ste 1B, Philadelphia, PA 19103
215-545-8917

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

◻ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

◻ 2  U.S. Government
Defendant

◻ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ◻ 1 | ◻ 1 | Incorporated *or* Principal Place of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | ◻ 2 | ◻ 2 | Incorporated *and* Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure of Property 21 USC 881 | ◻ 422 Appeal 28 USC 158 | ◻ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - | | ◻ 423 Withdrawal | ◻ 400 State Reapportionment |
| ◻ 130 Miller Act | ◻ 315 Airplane Product | Product Liability | ◻ 690 Other | 28 USC 157 | ◻ 410 Antitrust |
| ◻ 140 Negotiable Instrument | Liability | ◻ 367 Health Care/ | | | ◻ 430 Banks and Banking |
| ◻ 150 Recovery of Overpayment | ◻ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ◻ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ◻ 820 Copyrights | ◻ 460 Deportation |
| ◻ 151 Medicare Act | ◻ 330 Federal Employers' | Product Liability | | ◻ 830 Patent | ◻ 470 Racketeer Influenced and |
| ◻ 152 Recovery of Defaulted | Liability | ◻ 368 Asbestos Personal | | ◻ 840 Trademark | Corrupt Organizations |
| Student Loans | ◻ 340 Marine | Injury Product | | | ◻ 480 Consumer Credit |
| (Excludes Veterans) | ◻ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ◻ 490 Cable/Sat TV |
| ◻ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ◻ 710 Fair Labor Standards | ◻ 861 HIA (1395ff) | ◻ 850 Securities/Commodities/ |
| of Veteran's Benefits | ◻ 350 Motor Vehicle | ◻ 370 Other Fraud | Act | ◻ 862 Black Lung (923) | Exchange |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle | ◻ 371 Truth in Lending | ◻ 720 Labor/Management | ◻ 863 DIWC/DIWW (405(g)) | ◻ 890 Other Statutory Actions |
| ◻ 190 Other Contract | Product Liability | ◻ 380 Other Personal | Relations | ◻ 864 SSID Title XVI | ◻ 891 Agricultural Acts |
| ◻ 195 Contract Product Liability | ◻ 360 Other Personal | Property Damage | ◻ 740 Railway Labor Act | ◻ 865 RSI (405(g)) | ◻ 893 Environmental Matters |
| ◻ 196 Franchise | Injury | ◻ 385 Property Damage | ◻ 751 Family and Medical | | ◻ 895 Freedom of Information |
| | ◻ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ◻ 790 Other Labor Litigation | | ◻ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 791 Employee Retirement | **FEDERAL TAX SUITS** | ◻ 899 Administrative Procedure |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ◻ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ◻ 220 Foreclosure | ◻ 441 Voting | ◻ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ◻ 230 Rent Lease & Ejectment | ☒ 442 Employment | ◻ 510 Motions to Vacate | | ◻ 871 IRS—Third Party | ◻ 950 Constitutionality of |
| ◻ 240 Torts to Land | ◻ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ◻ 245 Tort Product Liability | Accommodations | ◻ 530 General | | | |
| ◻ 290 All Other Real Property | ◻ 445 Amer. w/Disabilities - | ◻ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ◻ 462 Naturalization Application | | |
| | ◻ 446 Amer. w/Disabilities - | ◻ 540 Mandamus & Other | ◻ 465 Other Immigration | | |
| | Other | ◻ 550 Civil Rights | Actions | | |
| | ◻ 448 Education | ◻ 555 Prison Condition | | | |
| | | ◻ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

◻ 2  Removed from
State Court

◻ 3  Remanded from
Appellate Court

◻ 4  Reinstated or
Reopened

◻ 5  Transferred from
Another District
*(specify)*

◻ 6  Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
ADEA

Brief description of cause:
age / race discrimination

## VII. REQUESTED IN COMPLAINT:

◻  CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ◻ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
12/22/14

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Joan Preston | : | CIVIL ACTION |
| v. | : | |
| The Vanguard Group, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court. (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　(X)

| | | |
|---|---|---|
| 12/22/14 | *[signature]* | Plaintiff, Joan Preston |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-8917 | 215-575-0826 | davidk@kollerlawfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___P.O. Box 133, Cheltenham, PA 19012___

Address of Defendant: ___1000 Vanguard Blvd., Malvern, PA 19355___

Place of Accident, Incident or Transaction: ___1000 Vanguard Blvd., Malvern, PA 19355___
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐ No☐

Does this case involve multidistrict litigation possibilities?     Yes☐ No☐

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

    Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

    Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

    Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

    Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, ___David M. Koller___, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: ___12/22/14___     ___[signature]___     ___90119___
                                   Attorney-at-Law                      Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___12/22/14___     ___[signature]___     ___90119___
                                   Attorney-at-Law                      Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _P.O. Box 133, Cheltenham, PA 19012_

Address of Defendant: _1000 Vanguard Blvd., Malvern, PA 19355_

Place of Accident, Incident or Transaction: _1000 Vanguard Blvd., Malvern, PA 19355_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))　　　　　　　　　　　Yes☐　No☐

Does this case involve multidistrict litigation possibilities?　　　　　　　　　　　　　　　　　Yes☐　No☐

*RELATED CASE, IF ANY:*

Case Number: _____　Judge _____　Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

　　　　　　　　　　　　　　　　　　　　　　　　　　　　Yes☐　No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

　　　　　　　　　　　　　　　　　　　　　　　　　　　　Yes☐　No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?　　　　　　　　　　　　　　　Yes☐　No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

　　　　　　　　　　　　　　　　　　　　　　　　　　　　Yes☐　No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
　　(Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
　　(Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _David M. Koller_, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: _12/22/14_　　　　　_[signature]_　　　　　_90119_
　　　　　　　　　　　　　　Attorney-at-Law　　　　　Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _12/22/14_　　　　　_[signature]_　　　　　_90119_
　　　　　　　　　　　　　　Attorney-at-Law　　　　　Attorney I.D.#

CIV. 609 (5/2012)

KOLLER LAW PC
David M. Koller, Esquire (90119)
Erin W. Grewe, Esquire (313787)
2043 Locust Street, Suite 1B          *Attorneys for Plaintiff*
Philadelphia, PA 19103
(T) 215-545-8917
(F) 215-575-0826

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOAN PRESTON** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO:** |
| | : | |
| v. | : | |
| | : | **Complaint and Jury Demanded** |
| **THE VANGUARD GROUP, INC.** | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT

Plaintiff, Joan Preston (hereinafter "Plaintiff"), by and through her undersigned counsel, brings this action against Defendant, The Vanguard Group, Inc. (hereinafter "Defendant" or "Vanguard"), for violations of the Age Discrimination in Employment Act of 1967 ("ADEA") at 29 U.S.C. §§ 621-634, Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers the following:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual domiciled in Philadelphia, Pennsylvania.

3. Plaintiff is a member of a protected class in that she is over the age of forty (40).

4. Plaintiff is also a member of a protected class in that her race is African American.

5. Upon information and belief, Defendant is a Pennsylvania corporation headquartered at 1000 Vanguard Blvd., Malvern, PA 19355.

6. Defendant employed Plaintiff from December 4, 2000 until her termination on September 18, 2013.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

8. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

9. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

10. The Court may properly maintain personal jurisdiction over Defendant because of Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction such that it complies with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

11. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

12. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil

2

Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

13. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and/or regularly conducts business in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

15. Plaintiff exhausted her administrative remedies under Title VII, the ADEA and the Pennsylvania Human Relations Act (hereinafter referred to as the "PHRA"). See Butterbaugh v. Chertoff, 479 F. Supp. 2d 485 (W.D. Pa. 2007).

16. On or about August 29, 2012, Plaintiff a timely written Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging race and age discrimination and retaliation against Defendant. A true and correct copy of this Complaint is attached hereto as Exhibit "A".

17. The Charge was assigned EEOC Charge No. 530-2012-03631 and was duly filed with the Pennsylvania Human Relations Commission ("PHRC").

18. On or about September 24, 2014, the EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue"). A true and correct copy of the Right to Sue is attached hereto as Exhibit "B".

19. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

20. Upon information and belief, the EEOC advised Defendant of Plaintiff's intent to file suit

and, per the requirements of Title VII and the ADEA for resolution through conciliation, conference, or persuasion, attempted but failed to achieve a voluntary resolution of Plaintiff's claims of employment discrimination.

21. Plaintiff files the instant Complaint within ninety (90) days of her receipt of the Right to Sue in this matter.

22. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

23. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

24. Defendant hired Plaintiff on or around December 4, 2000 in the position of Processing Clerk.

25. Thereafter, Defendant promoted Plaintiff to the position of Auditor.

26. In or around August 2007, Plaintiff laterally moved from an Auditor position to the position of Sales Support Specialist.

27. Plaintiff served as a Sales Support Specialist until her termination on September 18, 2013.

28. Plaintiff was sixty-nine to seventy-one (69-71) years old at the time of the incidents giving rise to this Complaint.

### Plaintiff Filed a Complaint of Discrimination with the PHRC

29. On or around July 5, 2011, Plaintiff filed a Complaint of Discrimination ("July Complaint") with the Pennsylvania Human Relations Commission ("PHRC") alleging that Defendant discriminated against her on the basis of her age, race and religion in

4

violation of the Pennsylvania Human Relations Act ("PHRA") and applicable federal law.

30. The July Complaint was assigned PHRC Case No. 201100055 and was duly filed with the EEOC as EEOC Charge No. 17F201161998.

31. Thereafter, Plaintiff agreed to close her complaint after Vanguard agreed to correct the harassment Plaintiff experienced.

32. However, the harassment did not stop.

<u>**Defendant Continues to Harass/Increases Its Harassment of Plaintiff**</u>

33. If anything, Defendant, through its managers and employees, increased its discrimination and harassment of Plaintiff after she agreed to close her July Complaint.

34. Plaintiff's coworkers, including but not limited to, Jennifer Book (Caucasian, early 30s), Sales Support Specialist, and Jennifer Wagner (Caucasian, late 30s/early 40s), Sales Support Specialist, continuously moved and removed items from Plaintiff's workspace in an effort to demoralize and upset Plaintiff.

35. By way of example, beginning in or around the end of 2010 and continuing through her termination, Plaintiff's coworkers did the following:

    a.  Moved her computer monitor(s);

    b.  Moved Plaintiff's voucher book;

    c.  Moved Plaintiff's book marker;

    d.  Moved greeting cards on Plaintiff's desk;

    e.  Moved flags in Plaintiff's workspace;

    f.  Placed a white powdery substance on Plaintiff's personal belongings and her office phone;

      g.  Placed pebbles in Plaintiff's desk chair; and

      h.  Damaged and/or destroyed Plaintiff's personal pictures.

36. Plaintiff reported these issues to her immediate supervisor, Nina Mattison Thomas, Crew Relations and Joe Orff, Security.

37. Defendant did nothing to address the harassment and discrimination.

**Defendant Isolated and Excluded Plaintiff**

38. After Plaintiff filed her Complaint of Discrimination with the PHRC, Defendant further isolated and excluded Plaintiff.

39. Plaintiff's coworkers and supervisors refused to communicate effectively with Plaintiff.

40. By way of example, throughout 2012 Plaintiff repeatedly attempted to say hi to and communicate with Jennifer Rutledge (Caucasian, late 30s/early 40s), Sales Support Specialist.

41. Ms. Rutledge refused to respond to Plaintiff.

42. The lack of communication particularly upset Plaintiff because Defendant previously issued her a written discipline for failure to reach out to the Sales Support Specialists.

43. Plaintiff's coworkers and supervisors failed to include Plaintiff in meetings and work discussions.

44. When Defendant invited Plaintiff to meetings, it did not appropriately include her in projects or provided her with the necessary details on projects.

45. In or around 2012, Brian Hamill (Caucasian, late 30s/early 40s), Manager, told Plaintiff to give Jennifer Wagner (Caucasian, early 30s) her ideas.

46. When Plaintiff balked at giving her ideas to Ms. Wagner, Mr. Hamill responded that she might as well give her ideas to Ms. Wagner, because Defendant was going to give Ms. Wagner credit for these ideas either way.

47. Furthermore, Defendant prevented Plaintiff from successfully completing her job functions.

48. On or around March 19, 2012, Ms. Book and Ms. Wagner, moved retail folders for the 2012 Sample Plan from Plaintiff's electronic database so that she could not access files necessary to the successful completion of her job duties.

49. This was a critical issue.

50. Defendant was unable to locate the missing files for approximately two (2) days.

51. Similarly, in or around 2012, Ms. Book locked Plaintiff out of an excel database so that she was unable to perform her job functions.

**Defendant Mocked Plaintiff's Age**

52. Beginning in or around 2008, Jennifer Book (Caucasian, early 30s) and Jennifer Wagner (Caucasian, late 30s/early 40s) mocked Plaintiff's age.

53. Ms. Book and Ms. Wagner looked down on Plaintiff because of her age.

54. They gave Plaintiff the impression that they believed she was "old school".

55. Additionally, Plaintiff's manager, Seth Fisher (Caucasian, late 30s) favored younger employees outside of Plaintiff's protected class.

56. During any office disputes, Mr. Fisher always sided with or supported younger employees.

57. Upon information and belief, Mr. Fisher gave younger employees larger raises than he gave Plaintiff.

## Plaintiff Complained of Discrimination

58. In or around 2008, Plaintiff first reported Ms. Book and Ms. Wagner's harassment to Seth Fisher (Caucasian, early 30s) Manager.

59. In or around 2008 or 2009, Mr. Fisher reported Ms. Book and Ms. Wagner's harassment to Nina Mattison Thomas (Caucasian, mid-40s), Crew Relations Representative.

60. Although Mr. Fisher initially insisted that Plaintiff report the age/race discrimination, he later began to discriminate against Plaintiff.

61. Mr. Fisher consistently supported Ms. Book and Ms. Wagner when Plaintiff complained of discrimination.

62. Mr. Fisher also refused to discipline Ms. Book or Ms. Wagner in any way.

63. Similarly, Ms. Mattison Thomas, Crew Relations Representative, and Tim Doyle (Caucasian, 40s), Line Manager, refused to discipline Ms. Books or Ms. Wagner.

64. Instead, they told Plaintiff that if she did not like Ms. Books and Ms. Wagner's behavior, she could resign from her position with Defendant.

65. On or around May 2, 2012, Plaintiff complained to Jennifer Bailey (Caucasian, 40s), Crew Relations Representative, that Ms. Book and Ms. Wagner's harassment had not stopped.

66. Plaintiff further complained that because Defendant repeatedly refused to address her complaints of age/race discrimination, she felt as though the Company did not value her.

67. Defendant did nothing to address this situation and the harassment continued.

68. The only solution Ms. Bailey offered Plaintiff was that she should lock up all of her personal belongings and her work phone any time she needed to step away from her desk, including to use the restroom.

69. This was not a real solution to the harassment/discrimination.

### COUNT I - DISCRIMINATION ON THE BASIS OF RACE
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

71. Plaintiff is a member of a protected class in that she is African American.

72. Plaintiff was qualified to perform the job in which she was employed: Sales Support Specialist.

73. Plaintiff suffered adverse job actions, including, but not limited to, failure to provide raises/bonuses and harassment.

74. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

75. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

76. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

77. The reasons cited by Defendant for the above-cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, infra.

### COUNT II – DISCRIMINATION ON THE BASIS OF AGE
### AGE DISCRIMINATION IN EMPLOYMENT ACT of 1967, 29 U.S.C. §§ 621-634

78. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

79. Plaintiff is a member of a protected class in that she is forty (40) years of age or older.

9

80. Plaintiff was sixty-nine to seventy-one (69-71) years old at the time of the incidents giving rise to this Complaint.

81. Plaintiff was qualified to perform the job in which she was employed: Sales Support Specialist.

82. Plaintiff suffered adverse job actions, including, but not limited to, failure to provide raises/bonuses and harassment.

83. 29 U.S.C. §623(a)(1) provides that "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age..."

84. Defendant treated individuals outside of Plaintiff's protected class more favorably that it treated Plaintiff.

85. By way of example, Defendant did not discipline Jennifer Book (early 30s) or Jennifer Wagner (late 30s/early 40s) for their harassment of Plaintiff.

86. Defendant also did not discipline Jennifer Rutledge (Caucasian, late 30s/early 40s) for failure to interact with Plaintiff, but disciplined Plaintiff for failure to interact with the other Sales Support Specialists.

87. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

88. The reasons cited by Defendant for the above-cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISCRIMINATION ON THE BASIS OF RACE AND AGE
### PENNSYLVANIA HUMAN RELATIONS ACT

89. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

90. Plaintiff is a member of a protected class in that she is African American.

91. Plaintiff is a member of a protected class in that she is over the age of forty (40).

92. Plaintiff was sixty-nine to seventy-one (69-71) years old at the time of the incidents giving rise to this Complaint.

93. Plaintiff was qualified to perform the job in which she was employed: Sales Support Specialist.

94. Plaintiff suffered adverse job actions, including, but not limited to, failure to provide raises/bonuses and harassment.

95. Defendant treated similarly situated people outside of Plaintiff's protected classes more favorably than Defendant treated Plaintiff.

96. Circumstances exist relative to the above-cited adverse employment actions that give rise to an inference of discrimination.

97. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

98. The reasons cited by Defendant for the above-cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. Plaintiff engaged in activity protected by Title VII.

101. Plaintiff complained of race and age discrimination internally by reporting the same to her supervisor, Seth Fisher; and Crew Relations Representative, Nina Mattison Thomas.

102. Plaintiff then filed a Complaint of Discrimination with the PHRC on July 5, 2011, alleging race and age discrimination in violation of the PHRA, Title VII and the ADEA. See Ex. A.

103. Thereafter, Defendant took adverse employment actions against Plaintiff, including but not limited to ongoing harassment, isolation and failure to provide raises/bonuses.

104. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

105. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

106. Plaintiff engaged in activity protected by the PHRA.

107. Plaintiff complained of race and age discrimination internally by reporting the same to her supervisor, Seth Fisher; and Crew Relations Representative, Nina Mattison Thomas.

108. Plaintiff then filed a Complaint of Discrimination with the PHRC on July 5, 2011, alleging race and age discrimination in violation of the PHRA and applicable federal law. See Ex. A.

109. Thereafter, Defendant took adverse employment actions against Plaintiff, including but not limited to ongoing harassment, isolation and disciplines.

110. There exists a causal connection between Plaintiff's participation on the protected

activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")

111. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

112. Plaintiff engaged in activity protected by the ADEA.

113. Plaintiff complained of race and age discrimination internally by reporting the same to her supervisor, Seth Fisher; and Crew Relations, Nina Mattison Thomas.

114. Plaintiff then filed a Complaint of Discrimination with the PHRC on July 5, 2011, alleging race and age discrimination in violation of the PHRA, Title VII and the ADEA. See Ex. A.

115. Thereafter, Defendant took adverse employment actions against Plaintiff, including but not limited to ongoing harassment, isolation and disciplines.

116. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Joan Preston, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future monetary losses as a result of Defendant's unlawful discrimination and breaches;

(b) Compensatory damages;

(c) Punitive damages (where applicable);

(d) Liquidated damages (where applicable);

(e) Emotional pain and suffering;

(f) Reasonable attorneys' fees;

(g) Recoverable costs;

(h) Pre and post judgment interest;

(i) An allowance to compensate for negative tax consequences;

(j) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices, which discriminate in violation of Title VII, the ADEA and the PHRA.

(k) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(l) Order Defendant to make Plaintiff whole by providing appropriate back-pay with prejudgment interest, in amounts to be proven at trial, reinstatement to their positions having compensation, responsibility, and duties, commensurate with their education, experience, and skills;

(m) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for their adverse actions, disciplines, and termination; and

(n) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in

controversy is not the subject of any other action pending in any court or of a pending arbitration

proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,
KOLLER LAW, P.C.

Dated: December 22, 2014          By:

David M. Koller, Esquire
Erin W. Grewe, Esquire
Counsel for Plaintiffs

15

# EXHIBIT A

OEEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 530-2012-03631 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Joan Preston | 267-608-0182 | 7/17/1941 |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| P.O. Box 26273 | Philadelphia, PA 19141 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Vanguard Investments | More than 15 | 800-523-1188 |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| 1000 Vanguard Blvd | Malvern, PA 19355 | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 1/4/12   Latest: 8/2012

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See attached.

*(stamp, faint)* 2012 AUG 29 P 4: 4 PHILADELPHIA, D.C.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 8/25/12   *Date*   *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

36 -143836

O.C. No. 139 DE of 2011

ESTATE OF JAMES JOSEPH FRANCIS CONNOLLY

**ORDER**

AND NOW, this ___11th___ day of ___December___, 20_14_ the

annexed Stipulation, in regards to Administrator John P. Sabatina Esquire's Petition for Citation

to Show Cause Why Beneficiaries Should Not Immediately Relinquish to Administrator All

Documentation of and Regarding the Decedent James Joseph Francis Connolly, is hereby

entered by agreement as an ORDER of this Court.

James Joseph Francis Connolly, Deceased

20110013905055

BY THE COURT:

_____ J.

Joseph Huerra, Esq.
David Koller, Esq.
Dale Larrimore, Esq.

Joan Preston

## Charge Continued:

I began working with Vanguard Investments ("Vanguard") on December 4, 2000. My position with Vanguard began as a Processing Associate and then a Sales Support Specialist. I was subjected to age and race discrimination, and retaliation for filing a complaint on July 5, 2011 (PHRC 201100055; EEOC 17F201161998).

### Age Discrimination

I am a 71 year old woman. I was harassed by Jennifer Book (32 years old) and Jennifer Wagner (40 years old) because of my age. Jennifer Book and Jennifer Wagner look down on older woman. They have mocked me for my age several times. The manager, Seth Fisher, looks down on older employees and favors younger employees. He favored Jennifer Book and Jennifer Wagner over me on several occasions. In addition, other similarly situated employees who are younger than myself were treated more favorably. Mr. Fisher was aware of my harassment due to age because I informed him.

### Race Discrimination

I am an African-American woman. I was harassed by Jennifer Book (32 years old) and Jennifer Wagner (40 years old) because of my race. Ms. Book and Wagner look down on older woman. They have mocked me for my age several times. The manager, Seth Fisher, looks down on older employees and favors younger employees. Nina Mattison Thomas, whose title was Crew Relations, and Tim Doyle, whose title was Line Manager openly favored Jennifer Book and Jennifer Wagner. Collectively, they refused to discipline Ms. Book and Wagner, and instead told me that I could resign if I didn't like their behavior. Mr. Fisher, Ms. Thomas and Mr. Doyle were all aware of my harassment due to race because I informed them.

### Religious Discrimination

I am a Pentecostal woman. I was harassed by Jennifer Book, Jennifer Rutledge, Jennifer Wagner and other employees because of my religion. Seth Fisher favored employees that were not Pentecostal over me, including allowing employees of other religions to listen to their non-pentecostal radio stations but expressly prohibiting me from listening to radio stations dealing with my religion.

I was persistently harassed by my co-workers because of my age, race and religion and the management of Vanguard Investments either ignored, allowed or actively promoted the behavior of my co-workers despite my protests.

### Retaliation

I filed a charge of discrimination on July 5, 2011. I withdrew my charge because my employer made promises to correct the harassment that I was experiencing. The harassment has not stopped and my employer has actually increased their harassment as a result of me filing the charge to try make me quit. *See* "Retaliation and Harassment- 2012."

Joan Preston

I have been subjected to continuous harassment, beginning in January 2011, because of my age, race, and religious discrimination. This harassment has included:

- Moving items and stealing items from my work space.
- Moving files from the electronic database and locking me out of my work computer.
- Preventing me from listening to my radio during work hours, while all other employees were allowed to listen to their radios.
- Throwing a white-powdery substance on my personal belongings.
- Harassing me due to my age without discipline.
- Harassing me due to my race without discipline.
- Harassing me due to my religion without discipline.
- Verbally harassing me.
- Placing hurtful messages on my work space.

This harassment has resulted in medical complications and emergency visits to the hospital and has created a hostile work environment.

Joan Preston

## Retaliation and Harassment – 2012

February 22nd – I arrived around 9:30 a.m. and found that my Sample Amex form and Book Marker that hangs on the bulletin board above the right side of my desk had been moved. Also, white particles in the phone. Brian Hamill (white male – partial toward two white females) has been my team leader for less than one year. During this time he has made several indirect comments about Sales Support, but I never responded to him. The hostility toward me is getting worse. Frequently, I feel that the mangers treat me like I am not apart of this group. However, I thought I would take a chance and share my recent experiences with Brian. Brian was out of the office today, so I e-mailed him a note and the subject was (chat) my comments says, "Brian: I know your calendar is extremely busy. But will you please pencil me in on your calendar for about five minutes to chat about something?"

February 23rd – I arrive around 9:30 and found white particles in my phone again, so I thought not to clean the phone. When Brian comes over I will show him what I found. Well, I don't recall the exact time that Brian came over that morning but he did come. And he said, "Yes Joan, you wanted to meet with me?" "I said yes, but before we walk away, may I show you something?" He said "yes." I lifted the telephone receiver up and pointed to the white particles in the phone. And he began to yell so loud, and said, "what are you talking about, I don't see anything." I said to him, "may we meet?" So we went into a conference room, and honest I felt very threaten by his tone and his verbiage. He said, "you are accusing somebody of something and I don't know what you are talking about and I don't think it is right. And you can loose your job for making these kinds of accusations about other crew members."

I said, "Brian, these issues have been happening for a long time and I never ever intended to discuss the situation with you. You have been my Team Leader for about six months, but things are getting out of hand." He said, "well you did tell me, and I don't think you understand how corporate operates. Now that you told me I must contact Crew Relations and get them involve." I was so disturb when he decided to terminate the meeting I don't recall most of what he said to me.

February 24th: - Brian called me into a brief meeting and said, "I owe you and apology. I was in shock when you brought that situation to my attention. I realize that I should not have yelled as I did. I have contacted Jennifer Bailey – Crew Relations and she will contact you." I thanked him for his support and that pretty much ended our meeting.

February – 27th - Jennifer Bailey – Crew Relations called me and I ask her if it would be okay if I could call her from a conference room. She agreed. I went to a conference room and called her. She asks for a brief overview about what was happening and I told her. I mentioned about the cameras and she agreed to meet with Joe Orff – Security to get any film clips that he had. However she asks me to have Brian arrange for a lap top. The meeting was scheduled for Monday – March 5th.

March 5th – We met but the Meeting was brief because we did not have the pass word for the lap top. So Jennifer Bailey rescheduled the meeting. She told me that Joe Orff gave her all he had. I told her that it should be a lot of footage. She said I have the one flash card. So we reviewed the footage and it was nothing related to any issue that I brought to their attention. What security gave her was late at night and housekeeping was vacuuming the floor. She said, well this is all that Joe said that he had. I told her that was not true. She asks me why did I believe that Joe would not be honest with me. I told her that I did not know, but he is not leveling with you. And they have not kept the agreement. She said, okay I will go back to him again and contact you.

March 19th: - The retail folders for the 2012 Sample Plans were not there. This is a critical issue, by request these plans are usually enclosed with our correspondence.

March 20th - A folder for 2012 Sample Plans was in the "U" Drive, but the data was not there.

March 21st - All folders and data were found in the "U" Drive.

March 27 – 1:50 p.m. I left for lunch and as I approached the lobby I seen Jennifer Wagner and Jennifer Book (two white racist women). I took a picture of my phone cradle before leaving for lunch. I failed to take a picture of my desk.

2:50 p.m. – When I returned from lunch I seen that my Sample Amex and my book marker on my bulletin board had been moved.

March 28th – I arrived around 9:25 a.m. this morning and spoke to Jennifer Rutledge and Jennifer Wagner, both spoke loud. That was a clue to expect they had tampered with my desk. The sample Amex Express Voucher and Book Marker that hangs on the bulletin board above the right side of my desk had been moved. Also, the greeting cards that I have on my desk had been moved.

12:00 p.m. – I walked away as I usually do everyday, when I returned around 12:15 p.m. I did not think to check my phone cradle to see whether or not it had been tampered with.

March 28th – I arrived around 9:25 a.m. this morning and spoke to Jennifer Rutledge and Jennifer Wagner, both spoke loud. That was a clue to expect they had tampered with my desk. The sample Amex Express Voucher and Book Marker that hangs on the bulletin board above the right side of my desk had been moved. Also, the greeting cards that I have on my desk had been moved.

12:00 p.m. – I walked away as I usually do everyday, when I returned around 12:15 p.m. I did not think to check my phone cradle to see whether or not it had been tampered with.

1:05 p.m. – Before leaving for lunch I thought to check my phone and seen white particles in the cradle. I took a picture of what I saw and cleaned the phone well prior to leaving for lunch.

March 29th – 9:35 a.m. When I arrived and went to my desk I found that my computer monitors were obviously uneven. My greeting cards had been moved around.

May 2nd – 10:28 a.m. – An e-mail to Jennifer Bailey – Crew Relations – "I hope that all is well with you. My being harassed has not stopped. I have not contacted you because I simply felt that this company does not value me. Yesterday around 11:00 a.m. I left my desk and when I returned the only person that was in this isle was Jennifer Rutledge. I found that one of the pictures on my wall was practically detached from the wall. "What would you suggest that I do? I do not understand why Joe Orff (Security) has authority but tells you that he will not get involve again. I am an employee as the perpetrators are. What have I done to deserve to be disrespected? Also, I am sure that they have proof about my claims."

Jennifer Bailey – Crew Relations (white female) did eventually call me and acknowledged that she received my e-mail. Regarding my claim that they have proof of me being harassed, she said, "I know Joe, why do you think that he would refuse to provide proof of you being harassed if he has it?" My response to her, "I don't know why. But when his investigation initially began he asked me to submit all dates for incidences to him that I found. I have done that. However, his response was usually several days after I reported issues to him and his feedback was usually, "I did not see anything, it was the cleaning crew or the electricity was out." Jennifer, I work in the building where the equipment is installed. In addition, Joe became very distance after the agreement was made that I had the right to review all film footage for dates that I submitted to him. And he has not cooperated with me." After the agreement Joe Orff responses to me were a week and more.

Jennifer Bailey said, I will discuss the issue with Joe Orff again. She said, "Now Joan, this might take me some time, but if I don't call you, don't you call me."

A strange issue, 2:45 p.m. I observed Jennifer Wagner standing up and staring at me as if I am something out of Mars when she became aware that I was observing her actions, she sits down. Around 3:10 p.m. I left for lunch, when I returned I found an envelope and card on my chair. A group photo that I have hanging on my shelf was ripped and scotched taped in the back. Jennifer Wagner was the only person in this isle when I returned.

May 4th – 9:30 a.m. - I spoke and got no response from Jennifer Rutledge. However, Jennifer Wagner did speak this morning."

June 11 - 2:00 p.m.– I took an half hour lunch and when I returned I observed that the Camouflage Certificate and book marker on my bulletin board had been moved. This is done to make me believe that there is something wrong with my mind. These behaviors are nothing new.

Around 5:45 p.m. I was prepping a FedEx package for Tim McNally – Sales Executive. I took my scissors and went to the copier room to get some FedEx wrapping paper because we did not have a FedEx envelope to fit the box. Just as I return to my desk Henry Blair appeared and said are you alright? And I replied with my usual remark, "It's just another day". He remarked, "Another dollar", he chuckled and went back into his meeting. I am making this point because, I am confident that the camera is still active. There was no other reason why he appeared at my desk as he did. I did not walk pass the meeting room.

June 28 – I arrived around 9:30 a.m. I spoke to Jennifer Rutledge, if she responded I did not hear her. It is these experiences that bother me because, I was written up because I was told that I do not reach out to Sales Support enough. When I got to my desk I found what looked like beige pebbles in my chair. The intent is to make me feel in adequate and different. I took a picture with my cell phone.

July 6th - 10:30 a.m. - I was away from my desk, Tim McNally – S.E. called Jennifer Wagner and her to assist me with preparing his presentations. When she came down I was not at my desk. However, when I returned I found that my flags had been moved from the position that I had them. I did not put them back at the moment. I refuse to allow them to know that their sick actions have any effect on me.

July 9th – I arrived around 9:45 a.m. I found that my two disaster recovery flags had been displaced.

July 16th - I left for lunch around 2:15 p.m. and walked down to the lunch room on the first floor, around 2:25 p.m. Jennifer Wagner walked through and spoke to me, but I had this feeling that she would have or had visited my desk while I was away. When I returned around 2:45 p.m. I lifted my phone receiver and found a dustin of white powder. I checked my phone prior to leaving for lunch and it was clean.

July 18th – I arrived around 9:30 and spoke to Jennifer Rutledge and got no response from her.

July 20th – I arrived around 9:35 a.m. and found a white powdery substance in my phone cradle.

August 3rd – I don't know why Jennifer Wagner responded to me in a hostile tone. Currently, we do not work on the same team, however, she does generate a Lead Distribution data report for my team. This report disburses total leads assigned to our sales team, and this report enables me to determine who is next up for a lead. This

morning Data Warehouse the system that stores the data for COGNOS where data is abstracted to generate the Lead Distribution Report.

So, around 11:00 a.m. I had to get the leads for the day assigned. I opened the "U" drive to access the report for Thursday – August 2nd to have something to work off of. As soon as I attempted to print the report, I received a call from Jennifer Wagner saying to me "Joan, how are you? I replied, fine. How are you?" She said, "I see you are in the file." I said, "yes, I am." She replied, "get out of it". I replied, "I am out."

August 15th - an announcement was made that I was approved for an Intern working with the CONN operation in ASG on the 3rd floor in the a.m. and in the afternoons I would return to my regular position. Apparently, Jennifer Book is very upset about it. Since the announcement the harassment is very frequent. Jennifer Wagner is on vacation this week and Jennifer Rutledge is on an Intern in another building.

3:40 p.m. – I went to lunch, and when I returned I found a note pad on my desk that does not belong to me. The pads that I have has the American flag on them. The pad that was left on my desk has "South Coast Paper" across the top. (I kept the pad for evidence)

6:45 p.m. when emptying my recycle can I found a piece of a zerox copy paper balled up in the bottom. The other thing the copy machine that is near me uses the better paper and that paper has a different cover.

August 16th – I arrive at my desk around 9:25 a.m. and observed a white sticky substance on my telephone cradle. I took a sample.

11:45 a.m. I returned to my desk and found the two tablets that I left in my center drawer were missing.

Joan Preston

# EXHIBIT B

DEZ 230

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Joan Preston<br>P. O. Box 26273<br>Philadelphia, PA 19141 | From: Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |
| --- | --- |

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
| --- | --- | --- |
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 530-2012-03631 | Legal Unit,<br>Legal Technician | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| --- | --- |
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other (briefly state) |

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

9/24/14
*(Date Mailed)*

cc:   THE VANGUARD GROUP
      David M. Koller, Esq. (for Charging Party)
      Paul G. Nofer, Esq. (for Respondent)